RICHARD WILSON, Plaintiff and Respondent, *v.* CLIFFORD GEHRING, Defendant and Appellant.

No. 11377.

Submitted October 17, 1968. Decided December 10, 1968.

448 P.2d 678.

Leo J. Kottas (argued), Helena, for appellant.

Small & Cummins and Carl Hatch, Floyd O. Small and Robert T. Cummins (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an action for damages caused by an assault and battery. The case was tried in the district court of Lewis and Clark county before a jury, resulted in a verdict for the plaintiff and defendant appeals from the judgment entered on the verdict.

From the record it appears that the defendant owns a ranch bordering on what is known as the Stemple Pass road which is a portion of the highway from Helena to Lincoln, Montana. There are many side roads extending up into the hills since the ranch consists of hills, mountain meadows and pasture lands and there are many fences and cross fences to control livestock.

In May of 1965 plaintiff purchased 320 acres of land which lay within the boundaries of the ranch properties owned, based or used by defendant and which consisted of 40 acre tracts interspersed, connected or adjoining forty acre tracts owned by the Anaconda Company or the United States. These lands had been used for years by the defendant for grazing his cattle. Shortly after plaintiff purchased the land he asked defendant for permission to cross defendant's land to get to plaintiff's but he was informed by defendant that he could not cross defendant's land to get to his land. The second time the matter was broached permission was again refused. On a third meeting defendant informed plaintiff he would never let him use the lands. This testimony is undisputed. Plaintiff informed defendant he had already purchased the land and had been up to it by crossing the river. On several occasions thereafter plaintiff used the ranch road of the defendant and defendant knew of such trespassing.

Plaintiff, being unable to secure permission from the defendant, then contacted the State of Montana Forester's Office in Missoula and the Anaconda Company's land division at

Bonner and some days before the shooting representatives of the state and the Anaconda Company had gone over the proposed route and had flagged it. Plaintiff generally followed this route to get into and out of his property using a gate through defendant's fence. On the night of August 18 he was required to alter his route because on that night he came up to the gate and found it locked. He then went to the point where his flagged route went through the fence, cut the wires and went through the fence.

According to defendant he had no trouble with trespassers until in June of 1965 when he claimed that gates were left open, wires let down, cut, and a certain gate was torn out. Defendant made complaints to the authorities and he locked the particular gate in question here and, secreting himself, he waited to catch the person. According to his testimony the plaintiff on the night of August 18, 1965, came to the gate, found it locked, proceeded a short distance down the road and drove up to the fence and cut it. Defendant then got the deputy sheriff and showed him the cut fence. On the following day, August 19, at about 6:00 a.m., defendant left his ranch with his employee Lyle Hiatt and one Frank Romack. They took their guns with them, defendant a 250/3000 Savage, Hiatt a 30-06 and Romack a 30-30, all loaded with soft-nosed hunting bullets; they also brought beer along.

When they arrived at the fence area they left the car approximately 350 yards away from where the fence had been cut, hidden in the timber. They then walked to the fence, spliced the wires together and proceeded to drink their beer. They then waited and when they heard plaintiff's truck coming down the road they spread out and hid behind a knoll and some bushes.

According to plaintiff, he arrived at the fence, which is entirely upon lands owned by the state of Montana, parked his truck near the fence, got out and began unsplicing the wires. After plaintiff had taken two wires apart he went

back to his truck to secure a pair of pliers and while he was in the truck Hiatt fired a shot which entered the truck and hit plaintiff. Plaintiff crouched down in the truck, a second shot came from the front of the truck and he was hit by fragments. He attempted to start the truck but it would not start. Hiatt yelled at him to get out of the truck. According to Hiatt plaintiff fired his pistol but this is denied by plaintiff who insists he never fired his pistol. Plaintiff testified that after he was ordered out of the truck defendant and Hiatt kept their guns pointed at him and moved him away from his truck; when they had him about 75 feet away defendant went to the truck, took plaintiff's pistol and fired it into the ground twice in the vicinity of the front of the truck. Plaintiff who was bleeding from his wounds, was taken to Lincoln, first aid given by a local doctor stopped the bleeding and he was then taken to the hospital in Helena. After ascertaining the approximate location where the pistol was fired into the ground a deputy sheriff and a highway patrolman dug up two slugs in that location.

Defendant's version of the shooting is that Hiatt shot into the air, Wilson dove for his truck, came up with a gun and fired two shots; that thereafter defendant fired through the truck and Hiatt also shot; that Wilson came out and they took him to Lincoln to the doctor and reported to the authorities.

We should mention another matter. Plaintiff moved a frame structure to his property for living quarters. On July 4, 1965, plaintiff's house was dragged down the road causing it to be torn apart, household goods, clothing and home furnishings scattered along the road. The highway patrolman who was called to investigate this occurrence testified as to the type of tires on the vehicle used to pull the structure, being snow tires on a vehicle with dual wheels on the rear. He investigated the area to find a vehicle answering that description and found one, the property of the defendant.

On this appeal defendant contends (1) that the damages are excessive; (2) that there is an insufficiency of the evidence to justify the verdict; and (3) that there were errors in law occurring upon the trial.

As to the damages, the jury returned a verdict of $7,150 general and $2,500 punitive.

Plaintiff is a licensed fishing and hunting guide. Out of season he cuts logs, cuts hay for his horses, and traps. At the time of the shooting plaintiff was haying and as a result of his injuries he lost his hay for that year. His actual medical expenses were $144.50. He testified that his left leg tires more easily; that in his business he does considerable walking and during cold weather his left leg gets stiff. There was a deep laceration over the right eyebrow; lacerations all over the right side of his face and a puncture wound of the lower thigh of the left leg. The doctor did not remove any fragments because they were too deeply imbedded to be removed at the time he first treated him. The doctor sutured the lacerations about his face and eye, cleansed his wounds and put an antiseptic dressing on the leg. The doctor stated the fragments should be removed if they cause trouble but that otherwise they might be left. The plaintiff testified that some of the pieces of metal remaining in his face and leg cause some discomfort.

Defendant contends that in view of the lack of permanent disability the amount of the damages can only be accounted for by the passion and prejudice of the jury, and that they are unreasonable. We cannot agree with defendant. It has been our position in reviewing damages based upon conflicting evidence that the amount thereof to be paid for personal injury is peculiarly within the province of the jury, and we will not disturb such finding unless the result is such as to shock the conscience and understanding of the court. Such is not the case here, this judgment has reasonable support in the evidence and it should not be disturbed. Ashley v.

Safeway Stores, Inc., 100 Mont. 312, 47 P.2d 53; Sheehan v. DeWitt, 150 Mont. 86, 430 P.2d 652.

 Defendant's second contention is that there is no substantial evidence to support the verdict and judgment. While he contends that the testimony tending to support the verdict is highly improbable, inherently impossible and contrary to physical facts, we must disagree.

Defendant argues the evidence much as he must have argued to the jury upon the trial. Admittedly the evidence raises the credibility of various witnesses, there definitely being two completely different versions of what took place at the time of the shooting, but these questions so adroitly posed by the defendant in his brief and argument were decided against him by the jury; the trier of the facts who determine the credibility of the witnesses and sift the evidence.

Under every version of the facts at the time of the shooting, Hiatt, an employee of defendant, fired the first shot; defendant knew from personal observation on the preceding evening who had cut his fence; it was he who requested his employee and Romack to come with him the next morning, all armed with high powered rifles, to lay in wait for the approach of the fence cutter, whom defendant well knew would be the plaintiff. All of them testified there was no prearranged plan, but the jury must have considered, in view of all the preparation, that the evidence disclosed three bushwhackers preparing for the ambush of what the defendant considered to be a squatter.

Turning now to defendant's third contention, that errors in law occurred at the trial.

 Defendant's first argument is an effort to convince this Court that a judgment in a criminal action should be a bar to this civil proceeding for damages. Such is not the law of Montana and no purpose would be served by an extended discussion. Suffice it to say that the criminal proceeding is one prosecuted by the state for an offense against one of its

residents; the civil proceeding is one brought by an injured person to recover from the wrongdoer damages for the injuries caused. The injured person has no individual legal interest in the criminal proceeding; the state has no direct legal interest in the civil proceeding. Neither proceeding is a bar to the other. 1 C.J.S. Actions § 11; 6 Am.Jur.2d, Assault and Battery § 109; Daily v. Redfern, 1 Mont. 467; Territory of Montana v. Drennan, 1 Mont. 41; Section 93-2606, R.C.M.1947; Section 94-605, R.C.M.1947.

 Defendant's second argument charges that the court erred in dismissing his fifth defense and cross claim in which defense defendant alleged that the plaintiff wilfully, maliciously and unlawfully caused a criminal proceeding to be filed against him. While defendant speaks of false imprisonment, actually his claim was for malicious prosecution. To state it briefly, one of the elements which must be proven is the absence of probable cause for the institution of the proceeding. Lindsey v. Drs. Kennan, Andrews & Allred, 118 Mont. 312, 165 P.2d 804, 163 A.L.R. 487, and cases cited therein. From what we have heretofore set forth in this opinion it is clear that assuming, arguendo, if plaintiff did have anything to do with causing the criminal proceeding to be filed, he had probable cause. The court did not err.

Defendant's third and final argument deals with his attempt to introduce evidence of previous hostile acts of the plaintiff; the refusal of the court to give certain offered instruction; the failure of the court to grant defendant's motion for a new trial.

 We find little fault with most of the arguments made by the defendant, our only problem comes when we try to find their applicability to the facts in this case. To say that one who prepares and participates in an ambush, where the undisputed proof discloses that an employee participant fired the first shot at the unarmed intended victim, should be permitted to introduce evidence of previous hostile acts of the

intended victim to support the defense of self-defense is incredulous.

As to the instructions, in our opinion the jury was properly instructed in the law applicable to the facts of this case, and most of the instructions about which defendant complains were covered by those given by the court, others were not applicable. There was no error.

In view of what we have heretofore said in this opinion the court did not abuse its discretion in denying defendant's motion for a new trial.

The judgment is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN C. HARRISON, concur.