No. 14660

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

KAREN C. DURAN,

Plaintiff and Appellant,

vs.

BUTTREY FOOD, INC., an Illinois
corporation; OSCO DRUG, INC., an
Illinois corporation, and BRUCE McKAY,

Defendants and Respondents.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Joseph P. Hennessey argued, Billings, Montana

    For Respondents:

        Anderson, Symmes, Brown, Gerbase, Cebull and Jones,
         Billings, Montana
        Rockwood Brown argued, Billings, Montana
        Quinn, Raucci & Lynch, Great Falls, Montana

    For Amicus Curiae:

        Hon. Mike Greely, Attorney General, Helena, Montana

_____

                        Submitted:  December 10, 1979

                         Decided:

Filed:  SEP 2 - 1980


            Thomas J. Kearney
_____
                                  Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment against the plaintiff after a jury verdict in the District Court of the Thirteenth Judicial District, Yellowstone County, in a suit for damages for false arrest. Plaintiff also appeals from the District Court's dismissal of her claim for malicious prosecution.

On March 16, 1976, plaintiff Karen C. Duran went to the Buttrey Food-Osco Drug store on Central Avenue in Billings, Montana, with her friend Yvonne Saunders. They parked near the entrance and entered the store. Beyond that point, the facts in this case are in dispute. According to appellant, she and Yvonne Saunders stopped at the cosmetics aisle where she looked at some lipstick.

The two women then proceeded to another part of the store where appellant tried unsuccessfully to find an electrical connector which her husband had requested her to pick up, not being sure of the correct size. From there appellant and Saunders walked to the front of the store where they looked at some macrame plant hangers. At that point, appellant went to the courtesy counter and purchased two packages of cigarettes while Saunders went back into the store, saying that she had something else she wanted to check on and that she would meet appellant outside in the car. As Duran was exiting the store, she was stopped by a clerk who asked to examine her purse. She showed him the purse, and finding nothing he allowed her to leave the store, which she did. Appellant then returned to Yvonne Saunders' car and waited.

About ten minutes later as Saunders was leaving the store, four employees of Buttrey and Osco followed her out and accused her of shoplifting and demanded she return to

the store. After a scuffle, Saunders returned with three of the employees. Bruce McKay, one of the employees, approached appellant, who was sitting in the car, accused her of shoplifting and grabbed her purse. Finding nothing, he threw the purse back at Duran and left a fourth employee to guard her until the police arrived. Following the arrival of the police, Duran was taken upstairs in the store where she was arrested. She was then taken to the police department, booked for theft and taken to the county courthouse to await bonding.

Buttrey contends that shortly after Duran and Saunders entered the store, Yvonne Saunders was recognized as a known shoplifter by Diane Eldridge, an Osco employee, who communicated this information to Osco's assistant manager, Bruce McKay. After observing Karen Duran pick up two packages of lipstick, Ms. Eldridge proceeded to the store offices at the rear of the building, one-half flight upstairs. From there and from catwalks along the entire rear length of the building, she and McKay observed appellant and Saunders through one-way mirrors. They maintain that they saw Karen Duran pass the two packages of lipstick to Yvonne Saunders who was standing behind her and who put them in her purse. Both McKay and Eldridge further testified that they watched Saunders pick up a jigsaw from a display and place it in her purse and take a sawblade and place it down the waistband of her pants. While this was being done, Karen Duran was immediately adjacent to her and in a position where she could see all that went on. A third store employee who had been alerted testified that he saw one of the women open her purse while the other woman placed a package of cheese products in it.

The Buttrey-Osco employees maintain that Karen Duran and Yvonne Saunders were together the entire time they were in the store and that they exited the store at the same time, contrary to appellant's testimony. The employees contend that they followed the two women out of the store and apprehended them at the car, bringing Yvonne Saunders back to the store to wait for the police to arrive. Karen Duran waited in the car after one of the store employees asked to see her purse, examined it, and found none of the stolen merchandise. The employee remained with appellant until the police arrived, about twenty minutes later, at which time she was taken into the store and arrested. A search of Yvonne Saunders at the premises turned up the jigsaw and other merchandise, and she was also arrested.

It is undisputed that appellant was later tried on a shoplifting charge arising out of this incident before the Billings police court and found guilty on April 27, 1976. She appealed to the District Court and was found not guilty by a District Court jury after a trial de novo. She later sued Buttrey Food, Inc., Osco Drug, Inc., and Bruce McKay for false arrest and malicious prosecution. The District Court dismissed the malicious prosecution charge and submitted the false arrest charge to the jury, which found for the defendants. Karen Duran brings this appeal from the judgment of the District Court.

Appellant raises six issues in this appeal:

1. Whether the court erred in refusing to enter the default of Buttrey Food, Inc., since it was not a properly registered corporation.

2. Whether the defendants had probable cause to arrest Karen Duran and whether the court committed error in directing a verdict on the malicious prosecution charge.

-4-

3. Whether the court erred in denying plaintiff's motion in limine and allowing evidence of Yvonne Saunders' reputation for shoplifting, while granting the defendants' motion.

4. Whether the merchant detention statutes, sections 46-6-502 and 46-6-503, MCA, are unconstitutional violations of the right of privacy.

5. Whether the court erred in instructing the jury on the crime of accountability for aiding and abetting the commission of an offense, where plaintiff was never charged with that offense and where it was not pleaded as a defense.

6. Whether or not the court improperly refused plaintiff's offered proof of damages.

Appellant's first ground for reversal is that a default judgment should have been entered against defendant Buttrey Food, Inc., for the reason that this defendant was not properly registered as a foreign corporation pursuant to sections 35-1-1015, 35-1-1016, and 35-1-1101, MCA. On March 28, 1977, approximately one month before this suit was filed on May 2, 1977, the records of the Secretary of State showed Buttrey Food, Inc., as an Illinois corporation. However, in its answer and subsequent pleadings, this party designated itself as Buttrey Food Stores Division, Jewel Companies, Inc., a New York corporation. Appellant contends that Buttrey neglected to notify the Secretary of State of the corporate change by failing to file amended articles of incorporation pursuant to section 35-1-1015, MCA, by failing to file articles of merger pursuant to section 35-1-1016, MCA, and by failing to file a proper annual report pursuant to section 35-1-1101, MCA. As a consequence of these failures, appellant argues that Buttrey lacked a valid certi-

ficate of authority to transact business in this state and that a default judgment should have been entered against that defendant. This argument is without merit.

Although the first paragraph of section 35-1-1004, MCA, states that:

"No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court in this state until such corporation shall have obtained a certificate of authority . . ."

the second paragraph makes it clear that:

"The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation and shall not prevent such corporation from defending any action, suit, or proceeding in any court of this state." (Emphasis added.)

Buttrey in this case was not seeking to maintain a suit--it was merely defending the action, which it was permitted to do under section 35-1-1004(2) notwithstanding the fact that it was improperly registered.

Appellant's second argument for reversal is that the defendants lacked probable cause to arrest her and that the District Court therefore erred in directing a verdict for the defendants on the malicious prosecution charge. She bases this argument on the fact that after a search of her purse, Osco's assistant manager Bruce McKay ascertained that there was no stolen merchandise belonging to the defendants in her possession.

To the contrary, the District Court was justified in dismissing the malicious prosecution claim on the basis of this Court's ruling in Stebbins v. Wilson (1948), 122 Mont. 186, 199 P.2d 453. In that decision, affirming the dismissal of a suit for malicious prosecution, the Court adopted the following rule:

-6-

> "The general rule is as contended for by defendants. It is stated in the Restatement of the Law on Torts, section 667, Page 421, as follows:
>
> "'The conviction of the accused by a magistrate or trial court although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury, or other corrupt means.'" Stebbins, 199 P.2d at 454.

Karen Duran has not alleged that her police court conviction was obtained by fraud, perjury, or any other corrupt means. Thus, her criminal conviction in Billings police court, although reversed by a jury verdict upon trial de novo in District Court, conclusively established that defendants had probable cause to prosecute her for suspected shoplifting. This is crucial because the absence of probable cause for instituting the proceeding is an essential element of appellant's action for malicious prosecution. Orser v. State (1978), ___ Mont. ___, 582 P.2d 1227, 35 St.Rep. 1167; Lowe v. Root (1975), 166 Mont. 150, 531 P.2d 674; Wilson v. Gehring (1968), 152 Mont. 221, 448 P.2d 678. Since probable cause was conclusively established by appellant's criminal conviction in the Billings police court, the District Court was correct in determining as a matter of law that the malicious prosecution charge could not stand.

Appellant's entire reply brief is devoted to an attempt to demonstrate that Stebbins is distinguishable from the present case. The plaintiff in that case had been convicted before a justice of the peace. Appellant contends that the rule in Stebbins applies only to a conviction by a "magistrate or trial court," and that the police judge who convicted Duran was not a "magistrate" and lacked power to make a determination as to probable cause. She argues that only a justice court has jurisdiction to make a finding of probable

cause.  In support of this contention she refers to the fact
that under previous law applicable at the time Duran was
tried and convicted in police court, police courts lacked
authority to issue search warrants.  State v. Tropf (1975),
166 Mont. 79, 530 P.2d 1158, 1161.  That case was overruled
by Chapter 165, Section 2, Laws of 1975, which amended what
is now section 3-11-102(2), MCA, to allow police courts (now
city courts) to issue search warrants and hold preliminary
hearings on felonies; however, the effective date of that
amendment is after Duran's conviction in the Billings police
court and hence does not apply to this case.

This argument misses the point.  The rationale behind
section 667 of the Restatement of the Law of Torts, as
adopted by the Montana Court in Stebbins, is not the con-
victing court's authority to make a determination of prob-
able cause.  On the contrary, the reasoning is as stated in
Comment (b) to section 667:

> ". . . unless the conviction was obtained by
> fraud, perjury, or other corrupt means, the
> opinion of the trier of fact expressed by its
> verdict under the rule that the guilt of the
> accused must be established beyond a reason-
> able doubt, is regarded as conclusive evidence
> that the person who initiated the proceedings
> had reasonable grounds for so doing."  (Empha-
> sis added.)

Appellant's third ground for reversal is that the
District Court should have granted appellant's motion in
limine to prevent the introduction into evidence of Yvonne
Saunders' reputation and past criminal record for shoplifting.
The District Court denied appellant's motion and allowed the
testimony for the purpose of showing that defendants acted
reasonably and had probable cause to detain appellant and to
cause her arrest, since defendants' employee Diane Eldridge
had recognized appellant's companion Yvonne Saunders as a

-8-

shoplifter. Appellant contends that this evidence was inadmissible under Rules 404, 405, 608 and 609, M.R.Evid.

In arguing the motion in limine, defense counsel stated:

> "Its not put in for the purpose of showing the guilt of Karen Duran but for the purpose of showing the reasonableness and probable cause on the part of the defendants because they knew Yvonne Saunders and knew her to be a shoplifter."

The district judge believed the testimony to be relevant to respondents' defense of the false arrest claim and stated to counsel that it would be admissible for the limited purpose of showing that defendants operated under probable cause and acted reasonably under the circumstances, and that the testimony was not being admitted for the purpose of incriminating plaintiff. The district judge stated that plaintiff was entitled to a cautionary instruction to this effect, but none was ever offered by plaintiff's counsel nor given to the jury.

It should be clear that the reputation of Yvonne Saunders as a shoplifter has no bearing in giving a right to the Buttrey employees to retain and arrest Karen C. Duran. That Yvonne Saunders was a shoplifter, and that the Buttrey employees knew of it, might of course be a ground for the surveillance of Saunders and her companion by the Buttrey employees when they discovered that Saunders and Duran had come into the store. However the right to detain or arrest either Saunders or Duran must derive from the statute on which Buttrey relies. Under section 46-6-502, MCA, a private person may arrest another when he is a merchant, and "has probable cause to believe the other is shoplifting in the merchant's store." It is obvious that the reputation of being a shoplifter alone would not be a sufficient reason

for Buttrey employees to detain and arrest either Saunders or Duran at the time in question. What would give rise to the right to detain the couple could only be a reasonable cause to believe that they were in fact shoplifting. If the rule were otherwise, Buttrey could detain and hold for arrest Saunders and any of Saunders' companions merely on the ground that Saunders was a shoplifter. Buttrey's right to detain and arrest Karen Duran must rise or fall on whether Buttrey had reasonable cause to believe that Duran was shoplifting, and not on the reputation of Saunders as a shoplifter. Admission of the evidence of Saunders' record as a shoplifter therefore, was error and it prejudiced Duran's case.

The District Court appreciated that there was a danger of prejudice in that the jury might think the evidence established guilt by association. In denying Duran's motion in limine, the District Court stated that appellant was entitled to a cautionary instruction limiting the purposes for which the evidence could be considered by the jury. The appellant did not offer a cautionary instruction, but in our view a cautionary instruction would not have reached the heart of the problem which is that the right to detain and arrest by merchants depends on reasonable cause for belief that shoplifting has occurred, and not merely on the ground that one of the persons has a reputation for shoplifting.

Appellant's fourth ground asserted for reversal is that Montana's merchant detention statute, which allows a merchant to make a private arrest on probable cause to believe that a person is shoplifting in the merchant's store, and which allows a merchant to stop and temporarily detain a suspected shoplifter for up to thirty minutes, unconstitu-

tionally violates the right of privacy guaranteed by 1972 Mont. Const. Art. II, §10. Therefore, appellant contends, the District Court erred in giving an instruction in the words of that statute, which reads:

"46-6-502. When arrest by private person authorized. A private person may arrest another when:

". . .

"(3) he is a merchant, as defined in 30-11-301, and has probable cause to believe the other is shoplifting in the merchant's store." (Emphasis added.)

"46-6-503. Restrictions on arrest by merchant-- liability. (1) A merchant acting under 46-6-502 may stop and temporarily detain the suspected shoplifter. The merchant in such event:

"(a) shall promptly inform the person that the stop is for investigation of shoplifting and that upon completion of the investigation the person will be released or turned over to the custody of a peace officer;

"(b) may demand of the person his name and his present or last address and may question the person in a reasonable manner for the purpose of ascertaining whether or not such person is guilty of shoplifting;

"(c) may take into possession any merchandise for which the purchase price has not been paid and which is in the possession of the person or has been concealed from full view; and

"(d) may place the person under arrest or request the person to remain on the premises until a peace officer arrives.

"(2) Any stop, detention, questioning, or recovery of merchandise under 46-6-502(3) and this section shall be done in a reasonable manner and time. Unless evidence of concealment is obvious and apparent to the merchant, 46-6-502 and this section shall not authorize a search of his coat or other outer garments and any package, briefcase, or other container, unless the search is done by a peace officer under proper legal authority. After the purpose of a stop has been accomplished or 30 minutes have elapsed, whichever occurs first, the merchant shall allow the person to go unless the person is arrested and turned over to the custody of a police officer.

"(3) Such stop and temporary detention, with or without questioning or removal of merchandise, when done by a merchant in compliance with the law,

-11-

shall not constitute an unlawful arrest or search.
A merchant stopping, detaining, or arresting a
person on the belief that such person is shoplifting
is not liable for damages to such person unless the
merchant acts with malice, either actual or implied,
or contrary to the provisions of this law." (Emphasis
added.)

Appellant's primary objection to section 46-6-503, MCA,
is that it allows private individuals--merchants--to detain,
search and arrest other private individuals in violation of
their right to privacy under the Montana Constitution.
Appellant urges that this statute violates 1972 Mont. Const.
Art. II, §10:

"The right of individual privacy is essential
to the well-being of a free society and shall
not be infringed without the showing of a
compelling state interest."

In particular, appellant objects to that part of section 46-
6-503, MCA, which provides:

"After the purpose of a stop has been accomplished
or 30 minutes have elapsed, whichever occurs first,
the merchant shall allow the person to go unless
the person is arrested and turned over to the custody
of a police officer."

Appellant argues that this statute also violates 1972
Mont. Const. Art. II, §11:

"The people shall be secure in their persons,
papers, homes and effects from unreasonable
searches and seizures . . ."

Under Montana law, the right to be secure from unreasonable
searches and seizures applies against infringements by
private individuals as well as by law enforcement officers.
State v. Brecht (1971), 157 Mont. 264, 270, 485 P.2d 47,
51.

The crucial question is whether there has been a
showing of a compelling state interest which would justify
the infringement of appellant's right to privacy. State v.
Sawyer (1977), 174 Mont. 512, 517, 571 P.2d 1131, 1133-34.
The mere fact that defendant's conduct comported with the

merchant's detention statute does not establish a compelling state interest. See, State v. Brackman, (1978) ___ Mont. ____, 582 P.2d, 1216, 1222, 35 St.Rep. 1103, 1112. To accept that rationale would be to surrender this Court's power to determine the constitutionality of enactments of the legislature.

We fail to discern a compelling state interest which would justify the very serious invasion of a person's privacy which occurs when she is publicly stopped and detained for up to thirty minutes by private individuals who search her purse and cause her great indignity and embarrassment, all under the immunity ostensibly granted by section 46-6-503, MCA. While it is true that merchants and their employees as private individuals have a right to defend their property, that right does not amount to a compelling state interest which would justify allowing the merchant or his employee to invade the privacy of another individual to the extent permitted under section 46-6-503, MCA. Therefore, insofar as it permits a merchant with immunity to stop and temporarily detain an individual suspected of shoplifting for up to thirty minutes without making an arrest, we hold section 46-6-503, MCA, unconstitutional as an invasion of the right to privacy guaranteed by 1972 Mont. Const. Art. II, §10, as it applies in this case.

We emphasize that our holding here has no effect on section 46-6-502(3), MCA, which provides that a merchant who has probable cause to believe that the other is shoplifting in a merchant's store may arrest such a person. While the drafters of section 46-6-503, MCA, probably did not intend so, the language of the statute gives the impression to the casual reader that a merchant may _in_ _any_ _event_ hold a person for up to thirty minutes on the belief the person is shoplifting. This goes beyond the power of detention or arrest given to

-13-

any other private person under section 46-6-502, MCA, and equates the merchant or his representatives with the same degree of power as a peace officer under the stop-and-frisk statute. Section 46-5-402, MCA.

The merchant's arrest statute, sections 46-6-502(3) and 503, MCA, were adopted originally as a part of Chapter 274, Montana Session Laws of 1974. That act contained a severability clause declaring that if a part of the act were found invalid, all severable valid parts remained in effect. By holding the application of the thirty-minute provision in the merchant's statute unconstitutional, especially as applied in this case, we leave remaining in force and effect the provision of section 46-6-503(2) that any stop, detention, questioning or recovery of merchandise under the statute shall be done in a reasonable manner and time.

We have limited our holding here on the unconstitutionality of section 46-6-503(2) to the point raised by the appellant, that the thirty-minute clause is an invasion of the right of privacy guaranteed by Montana's constitution, and its further guaranty against unreasonable searches and seizures. 1972 Mont. Const. Art. II, §§10 and 11. Not raised in this case is the question whether section 46-6-503, MCA, is in essence a detention statute as distinguished from an arrest statute. See Cervantez v. J. C. Penney Company, Inc. (1979), 24 Cal.3d 579, 595 P.2d 975, 981-2.

Appellant's fifth ground for reversal is that the district judge erred by instructing the jury on the subject of accountability for aiding and abetting the commission of an offense, where appellant was never charged with accountability and where it was not pleaded as a defense.

The jury was instructed substantially in the words of section 45-2-302(3), MCA:

"You are instructed that a person is legally accountable for a criminal offense when either before or during the commission of an offense by another, and with the purpose to promote or facilitate such commission, such persons solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The instruction as given disregards the gravamen of plaintiff's false arrest claim that she was arrested, charged and tried for the offense of shoplifting. She was not charged or tried as an accomplice.

Although in criminal cases this Court has held that an indictment charging the defendant with an offense but not specifically charging him with accountability has been sustained by proof that he was guilty of aiding or abetting in the commission of the offense, State v. Murphy (1977), 174 Mont. 307, 310, 570 P.2d 1103, 1105, these cases do not meet the situation that is presented in the case at bar. The appellant charges that she was falsely arrested for the offense of shoplifting. It is not germane to the issue that she might also have been charged as an accomplice, because that did not occur.

Appellant's sixth and final argument for reversal is that the District Court improperly refused to allow her offered proof as to damages occurring after formal charges had been filed. She argues that the District Court also erred in excluding proof of damages on the malicious prosecution charge. The short answer to these contentions is that the second question was settled by the District Court's dismissal of the malicious prosecution claim based on Stebbins, and the District Court upon a new trial can allow appellant to offer proof of all damages arising out of the false arrest, which she claims occurred.

The judgment of the District Court is reversed and the case is remanded for a new trial.

_____
                 Justice

We Concur:

_____
          Chief Justice


_____

_____
                Justices

Mr. Chief Justice Frank I. Haswell, concurring in part and dissenting in part.

I concur with the majority in granting a new trial on the ground that the admission in evidence of Yvonne Saunders' reputation for shoplifting denied defendant a fair trial.

My quarrel is with the majority holding that the 30-minute detention provision in the Merchant's Detention Statute (section 46-6-503, MCA) is unconstitutional on its face.

The majority have seemingly construed the Merchant's Detention Statute to authorize a merchant to hold a suspected shoplifter for up to 30 minutes in any event. In my view this is a tortured construction of the statute at odds with the plain meaning of the language enacted by the legislature.

Montana law authorizes a merchant to arrest a suspected shoplifter in cases where the merchant "has probable cause to believe the other is shoplifting in the merchant's store." Section 46-6-502(3), MCA. The Merchant's Detention Statute provides that where the merchant is acting under such authority he "may stop and temporarily detain the suspected shoplifter." Section 46-6-503(1), MCA. In such event, the merchant shall promptly inform the person that the stop is for investigation of shoplifting and that upon completion of the investigation the person will be released or turned over to the custody of a peace officer; the merchant may demand the person's name and address and may question the person in a reasonable manner to ascertain whether he is guilty of shoplifting; the merchant may take into possession any merchandise for which the purchase price has not been paid; and he may place the suspected shoplifter under arrest or request him to remain on the premises until a peace officer arrives. Section 46-6-503(1) (a through d), MCA. The statute further provides that any stop, detention, questioning or recovery of merchandise must be done in a reasonable manner and

- 17 -

time; that unless concealment is obvious, the merchant is not authorized to search the suspected shoplifter's clothing or personal effects; and that after the purpose of the stop has been accomplished or 30 minutes have elapsed, whichever occurs first, the merchant shall allow the person to go unless he is arrested and turned over to the custody of a police officer. Section 46-6-503(2), MCA. The statute finally provides that such stop and temporary detention is not an unlawful arrest or search if the merchant complies with the law and that the merchant is not liable in damages unless he acted with malice or in violation of the law. Section 46-6-503(3), MCA.

The merchant in this case complied with the statute. No contention has been raised that he did not.

The majority seemingly construe this statute as permitting a merchant to detain a suspected shoplifter for up to 30 minutes in any event. In my view the plain language of the statute belies this construction.

The Merchant's Detention Statute provides in pertinent part:

> "(2) Any stop, detention, questioning, or recovery of merchandise under 46-6-502(3) and this section shall be done in a reasonable manner and time. . . . After the purpose of the stop has been accomplished or 30 minutes have elapsed, whichever occurs first, the merchant shall allow the person to go unless the person is arrested and turned over to the custody of a police officer." Section 46-6-503(2), MCA. (Emphasis added.)

In my view, this language plainly says that any stop, detention, questioning or recovery of merchandise shall be done in a reasonable manner and within a reasonable time until its purpose shall have been accomplished subject to an absolute time limit of 30 minutes in any event. Where the language of a statute is plain, unambiguous, direct and certain the statute speaks for itself and there is nothing left for the court to construe. Dunphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660 and cases cited therein. The function of the Court is simply to ascertain and declare what in terms or in substance is contained in the statute. Section 1-2-101, MCA. Such is the case here.

- 18 -

The 30-minute provision in the Merchant's Detention Statute so determined does not violate either the right of privacy provision in the Montana Constitution nor the prohibition against unreasonable searches and seizures therein.

The constitutional right of privacy is contained in this language:

> "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without a showing of a compelling state interest." Art. II, Sec. 10, 1972 Montana Constitution.

Equally important is the inalienable right of all persons to acquire, possess and protect their property. Art. II, Sec. 3, 1972 Montana Constitution. Shoplifting poses a substantial threat to these rights. In 1975 there were an estimated 140 million shoplifting incidents nationwide resulting in 1.9 billion in business losses to retailers. U. S. Department of Justice, Security and the Small Busines Retailer, p. 11. These losses are passed on to the purchasing public in the form of higher prices. Public law enforcement officers are not generally, if ever, engaged in walking the floors of retail stores where shoplifters operate. In an effort to secure the right of a merchant to protect his property, merchant's detention statutes had been enacted in 44 states by 1977. Citizen's Arrest, Mr. Cherif Bassiouni, 1st Ed., p. 81.

As noted in the majority opinion, the crucial question is whether there is a compelling state interest which would justify the infringement of the right to privacy provision in Montana's Constitution. The preceding paragraph provides that compelling state interest. Montana case law further provides that protection of a person's property furnishes a compelling state interest to which the right of individual privacy must yield. State ex rel. Zander v. District Court (1979), ____Mont.____, 591 P.2d 656. We have previously expressed the controlling principles in this fashion:

- 19 -

"The right of individual privacy is a fundamental constitutional right expressly recognized as essential to the well-being of our society. The constitutional guarantee of individual privacy is not absolute. It must be interpreted, construed and applied in the light of other constitutional guarantees and not in isolation. The right of individual privacy must yield to a compelling state interest. Such compelling state interest exists where the state enforces its criminal laws for the benefit and protection of other fundamental rights of its citizens."
Zander, 591 P.2d 656.

Montana's constitutional prohibition against unreasonable searches and seizures reads in pertinent part as follows:

"The people shall be secure in their persons, papers, homes, and effects from unreasonable searches and seizures. . ."

The Merchant's Detention Statute expressly and specifically provides that any stop, detention, questioning or recovery of merchandise must be done "in a reasonable manner and time" and that "after the purpose of the stop has been accomplished or 30 minutes have elapsed, whichever occurs first" the suspected shoplifter must be released or arrested and turned over to a police officer. Section 46-6-503(2), MCA. Before any arrest is made by the merchant, he must have "probable cause to believe the other is shoplifting in his store." Section 46-6-502(3), MCA.

With these safeguards and limitations, I find nothing unreasonable in the maximum 30-minute detention provision in the Merchant's Detention Statute or in the limited protection it affords a merchant in protecting his own property. The constitutional prohibition applies only to <u>unreasonable searches and seizures.</u> The absolute 30-minute limit on detention <u>in any event</u> prevents detention for an unreasonable length of time. The further provision that the detention must be reasonable as to time and manner and the person must be released or arrested when the purpose of the stop has been accomplished without reference to the 30-minute maximum prevents any overreaching or unjustifiable intrusion by a merchant. Only by construing the statute

- 20 -

to authorize a merchant to detain a suspected shoplifter for up to 30 minutes in all cases as the majority have apparently done, is there any violation of the Montana Constitutional prohibition against unreasonable search and seizures.

I would hold the Merchant's Detention Statute constitutional in its entirety.

_____
Chief Justice


Mr. Justice John Conway Harrison:

I concur with Chief Justice Frank I. Haswell.

_____
Justice