BELGRADE STATE BANK, a Banking Corporation, Plaintiff and Appellant, v. GEORGE ELDER, d b/a Elder Logging Co., and d/b a Elder Bros. Logging Company, 3-D Lumber Company, Skagit Equipment Company, and Western Construction Equipment Company, a Division of Harold M. Doolen & Sons, Inc., a Montana Corporation, Defendants and Respondents.

No. 11858.
Submitted January 14, 1971.
Decided March 8, 1971.
482 P.2d 135

1

· Thomas E. Towe and Gerald Neely (argued), Billings, for plaintiff-appellant.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Corette, Smith & Dean, Kendrick Smith (argued), Butte, Douglas R. Drysdale (argued) Drysdale & McLean, Berg, O'Connell, Angel & Andriolo, Charles F. Angel (argued), Bozeman, for defendants-respondents.

MR. JUSTICE CASTLES delivered the opinion of the Court.

This is an appeal from a summary judgment entered by the District Court in Gallatin County. A motion to dismiss the appeal as well as the merits of the appeal were argued the same day.

Belgrade State Bank, appellant here, loaned money to George Elder. Elder was a logger. Elder signed several promissory notes in 1964 and 1965. The notes were secured by a security agreement entitled "Security Agreement (Farm Products and Equipment)" covering timber and logs, and listing equipment

as a crawler-type tractor, a bulldozer, a truck with mounted crane and a yarder. In November 1967, the bank took possession of the bulldozer.

The security agreement was filed of record in Gallatin County; but apparently not in the secretary of state's office.

Subsequently, Elder traded the crane to defendant Western Construction Equipment Company for a heel boom loader. Also, Elder traded the yarder and the crawler-type tractor to defendant Skagit Equipment Company for a Skagit yarder.

Elder encountered financial difficulties and failed to make payments on the heel boom loader and the Skagit yarder. They were repossessed and sold to 3-D Lumber Company.

In December 1967, Elder filed a petition in bankruptcy. Plaintiff-appellant here, the Belgrade State Bank, filed in the bankruptcy matter ''Specification of Objections to Discharge'' as follows:

''1) On or about March 6, 1967, the bankrupt, while engaged in business as a sole proprietor obtained from the Belgrade State Bank an extension of credit on six promissory notes all due on demand except one due on December 21, 1964, and payable to the said Belgrade State Bank by making a materially false statement in writing respecting his financial condition, which said materially false statement was that his total liabilities were $111,466.00, (One Hundred Eleven Thousand Four Hundred Sixty-Six Dollars) whereas in truth and in fact the same were $248,361.95 (Two Hundred Forty-eight Thousand Three Hundred Sixty-one and 95/100 Dollars).

''2) On or about March 6, 1967, the bankrupt, while engaged in business as a sole proprietor obtained from the above Belgrade State Bank an extension of credit on six notes all due on demand except one due on December 21, 1964, and payable to the Belgrade State Bank by making a materially false statement in writing respecting his financial condition, which said materially false statement was that his total machinery, equipment and fixtures had a value of $113,300 (One Hun-

4

dred Thirteen Thousand Three Hundred Dollars), whereas in truth and in fact, the same were less than $60,000 (Sixty Thousand Dollars).

''3) On or about August 7, 1964, the bankrupt, while engaged in business as a sole proprietor obtained money, in the form of a loan from the Belgrade State Bank on credit by making a materially false statement in writing respecting his financial condition, which said materially false statement was that he had Seven Thousand Dollars ($7,000) worth of logs cut ready for hauling, whereas in truth and in fact, he had no such logs cut ready for hauling.

''4) Some time after March 7, 1967, and subsequent to the first day of the twelve months immediately preceding the filing of the Petition and bankruptcy herein, the bankrupt transferred certain of his property consisting of a Little Giant Heel Boom Loader and a Skagit Yarder to 3-D Lumber Company or to other persons with intent to defraud, hinder, or delay his creditors.''

The referee in bankruptcy held a hearing and made findings as reflected hereinafter:

''1. That on or about March 6, 1967, the bankrupt, at the request of Jack W. Swainson, Executive Vice President of Belgrade State Bank, at Belgrade, Montana, said Swainson then and there acting as agent and for and on behalf of said Belgrade State Bank, answered questions posed him, the said bankrupt, by the said Swainson; Swainson, as the bankrupt answered the questions, placed his answers upon the form entitled ''Personal Statement,'' that all answers given by the bankrupt to the said Swainson were given to the best of the bankrupt's knowledge, and were not materially false in any respect. That the bankrupt, insofar as he knew, truthfully listed his total liabilities, total assets, and total value of machinery, equipment and fixtures; That at said time, March 6, 1967, the Belgrade State Bank was the holder of six promissory notes executed by the bankrupt, five of these notes being demand, and the sixth having been due on December 21, 1964.

That Belgrade State Bank made no binding extension of credit, or any extension of credit, on any representation made by the bankrupt, and bankrupt received nothing of value as a result of any statement, written or oral, made on or about March, 1967, to the said Belgrade State Bank; That as a result of said conversation, bankrupt did assign Seventy-five Cents ($.75) per thousand board feet on all timber cut by him, to the said Belgrade State Bank, which said moneys so assigned were received by the said Belgrade State Bank.

"II. That the bankrupt never made any material false statement, or any false statement, either oral or written, respecting his financial condition to the said Belgrade State Bank, said Belgrade State Bank never made any extensions of credit, nor parted with anything of value, upon any representation, either oral or written, made by the bankrupt, in connection with the said "Personal Statement".

"III. That on or about August 7, 1964, the bankrupt, while engaged in business as a sole proprietor, obtained money, in the form of a loan to the Belgrade State Bank on credit by making a statement in writing respecting his financial condition, which said statement was that he had Seven Thousand Dollars ($7,000) worth of logs cut, and ready for hauling, and that at said time the said bankrupt had in excess of Ten Thousand Dollars ($10,000.00) worth of logs cut and ready for hauling, and that the said statement so made was in fact true.

"IV. That the bankrupt, subsequent to the first day of the twelve months immediately preceding the filing of his Petition in Bankruptcy herein, made no transfer of property described as a Little Giant Heel Boom Loader and Skagit Yarder. That the bankrupt held said property hereinbefore described under a Lease Option Agreement with 3-D Lumber Company, and never held a legal title thereto, and that said property was repossessed by the 3-D Lumber Company due to the default of the bankrupt in making Lease payments thereon. That the

6

bankrupt never made any transfer of said property, and particularly any transfer of said property with any intent to defraud, hinder, or delay his creditors.''

The bank did not appeal.

Subsequently the bank filed in Gallatin County the complaint that is the subject of this appeal. 3-D Lumber Company, a defendant, has been dismissed as a defendant. Elder is no longer in the case. Skagit is still in and has filed motions to dismiss and responded to the merits.

The complaint alleged Elder was obligated to plaintiff bank on certain secured notes, said obligations being later scheduled by Elder in his petition for bankruptcy. Plaintiff alleged that, notwithstanding Elder's discharge in bankruptcy, he was still obligated to plaintiff on the notes, because the obligations were not dischargeable by virtue of their exception from discharge under section 17(a) (2) of the United States Bankruptcy Act, U.S.C.A. Title 11, § 35, which excepts from discharge those liabilities founded upon a materially false statement in writing respecting one's financial condition.

By way of answers with attached exhibits of the bankruptcy proceedings, the previously quoted findings of fact and conclusions of law were put into the case. It is seen that as between Elder and the bank, the exact notes which were the basis of the bank's proof of claim in the bankruptcy proceedings are the basis of the complaint; and that the alleged exception from discharge was adjudicated contrary to the bank's allegations and no appeal was taken.

The dispositive issue here is whether the findings of fact and conclusions of law in the bankruptcy proceeding, the order denying the bank's specifications of objection to discharge in bankruptcy, and the discharge in bankruptcy are res judicata. Certain other issues are presented by respondent Skagit Equipment Company on the motion to dismiss and the merits, but we need not discuss them here. The position of Skagit is that if there were no valid existing obligation on behalf of Elder

to the bank by reason of the discharge in bankruptcy, then the bank has not shown any right to relief against Skagit.

On the other hand, the appellant bank insists that the findings and conclusions of the referee are limited to questions dealing with the bankruptcy court's power to adjudicate matters relating to the administration of the bankrupt's estate and the property which should be brought into the court's possession. See: U.S.C. Title 11, § 11(a) (20); 1 Collier Bankruptcy Manual, Ch. 23, para. 23.00, p. 302. The bank then reasons that its security rights to collateral were not matters relating to the administiration of the bankrupt's estate unless the bankrupt held equity in the collateral over and above the security interest which, the bank asserts, was not the situation here.

However, by what has been indicated heretofore, the bankruptcy court did rule on the facts alleged by the bank as the facts excepting the property from the discharge. The allegations in both counts in the bank's complaint are based on an alleged existence of a valid and existing claim by the bank against Elder for money due on the notes. Specifically, in Count Two it is alleged that the obligations represented by the notes are not dischargeable in bankruptcy by virtue of section 17(a) (2) of the United States Bankruptcy Act, U.S.C.A. Title 11, § 35. The bank's claim against Elder, based on the notes being a provable claim in bankruptcy, would have been discharged by the discharge in bankruptcy unless saved by the provisions of section 17(a) (2) of the United States Bankruptcy Act, U.S.C.A. Title 11, § 35(a) (2).

That section provides in part:

"(a) A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false

statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive  *  *  *.''

And, for the jurisdiction of the bankruptcy court, see U.S.C.A. Title 11, § 66.

■ The issues raised by the bank in this action as to the discharge of Elder, insofar as Elder's obligation to it based on the notes in question are concerned, have already been decided. The bank having participated in the bankruptcy proceedings is now bound by the decision. See discussion in 1 Collier Bankruptcy Manual, Ch. 23, para. 23.06 [3], pp. 334, 335 on ''Consent by Invoking Bankruptcy Court's Jurisdiction.''

The bank here argues that since Skagit and the other parties were not parties to the bankruptcy proceedings the findings are not res judicata as to them. This may be, but since Skagit's liability is predicated on Elder's position, the findings as to Elder are res judicata, and the findings are expressly contrary to the exception of the property from discharge.

■ The bank goes even further in its argument than indicated above. It argues that pursuant to the Uniform Commercial Code, section 87A-9-306(2), R.C.M.1947, its security interest continued in the collateral as well as any identifiable proceeds because Elder's (the debtor) actions in trading the equipment was unauthorized and because the code does not provide otherwise. We note here that the issue raised concerning the filing of the security agreement with the Gallatin county clerk and recorder, and not with the secretary of state as required by section 87A-9-401, R.C.M.1947, is explained away by the bank by claiming that forestry and logging are agricultural; and thus are farming; and thus the financing statement need only be filed with the county clerk and recorder. We shall not dwell on this other than to reject such an argument. It does point up, however, that the security agreement was not ''perfected'' in any event as to those without notice.

Returning to our discussion of the effect of the bank's voluntary submission to the jurisdiction of the bankruptcy court,

we find one Montana case of some import. In National Bank v. Bingham, 91 Mont. 62, 70, 5 P.2d 554, 556, this Court said:

"It is true that the state court had acquired jurisdiction over the subject-matter of the foreclosure proceeding before the bankruptcy proceeding was instituted, but there is nothing in the rule of comity to prevent the parties from taking the action they did. The voluntary surrender, by the bankrupt, of his property to the bankruptcy court or its officers, was equivalent to consenting to the jurisdiction of that court over the subject-matter (1 Collier on Bankruptcy, 759; Wells & Co. v. Sharp [C.C.A.] 208 F. 393; In re Brantman [C.C.A.] 244 F. 101), and when the bank filed its claim in the bankruptcy proceeding it consented to the jurisdiction of that court, both as to the property and its claim (1 Collier on Bankruptcy, 761; In re Howard Laundry Co. [C.C.A.] 203 F. 445).

"In so far as the rights and obligations of Frank Bingham are concerned, they were removed to the bankruptcy court and we cannot interfere with the judgment of that court. As Mrs. Bingham was not a party to that proceeding, any rights she may have had in the property of her husband are not affected by that proceeding, but that fact does not aid her here."

Both parties here refer to Myers v. International Trust Co., 263 U.S. 64, 75, 44 S.Ct. 86, 68 L.Ed. 165. In that case the court said:

"In other words, the exact point upon which the suit for deceit depended, to wit, the falsity of the statement, was not considered and passed on by the bankruptcy court. * * *

"In the case before us, however, we find that the issue of the statement's falsity was the same and was controlling in both suits and that because it was decided against the trust company in the first suit, the decision concludes the issue against the company in the second. It was error, therefore, to exclude from the evidence the record of the bankruptcy judgment on the composition."

Appellant, however, insists that here, unlike the Myers case, the exact point was not decided by the bankruptcy court. Appel-

lant admits, as it must, that the bankruptcy court found as it did; but says it did not find whether there was a perfected security interest in the collateral. Be this as it may, the bankruptcy court did have the jurisdiction voluntarily surrendered to it by the bank, and the state court will not entertain further litigation over the very same matters. As we have indicated above, the bank never has shown a "perfected" security interest in any event.

Appellant having failed to show error in the proceedings in the district court, the judgment is affirmed.

Heretofore we have referred to the motion to dismiss of Skagit, but have chosen to rule on the merits. We have also mentioned that Elder is no longer in the case. On the day set for oral argument, counsel for the bank announced orally that the bank was abandoning its appeal as to Elder.

Subsequently, on February 16, 1971, Elder filed a motion for damages for appeal without merit claiming the appeal was abandoned and Elder dismissed because of an admitted lack of merit. However, the statement orally by counsel for the bank made it clear that he was not dismissing for a lack of merit but rather because as against Elder, the bankrupt, no collection on any judgment was possible. The record is clear that Elder owed the money; and except for bankruptcy proceedings, would still be legally obligated. He caused the losses to the various parties, including the bank, and will not now be heard to claim damages because of an obvious lack of ability to respond. Accordingly, the motion by Elder for damages for appeal without merit is denied.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, JOHN C. HARRISON and DALY, concur.