3-D LUMBER COMPANY, Plaintiff and Respondent, *v.* BEL-
GRADE STATE BANK, a Banking Corporation, Defend-
ant and Appellant.

No. 12002.

Submitted June 17, 1971.

Decided July 20, 1971.

Rehearing Denied August 31, 1971.

487 P.2d 1136.

Towe, Neely & Ball, Billings, Thomas Towe, argued, Billings, for defendant-appellant.

Corette, Smith & Dean, Butte, Kendrick Smith, argued, Butte, for plaintiff-respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

3-D Lumber Company brought this action against the Belgrade State Bank in the district court of Gallatin County to recover damages for malicious prosecution. Belgrade State Bank appeared by motion to dismiss and seeking, in the alternative, a motion for summary judgment. In response, 3-D Lumber Company filed a motion for summary judgment. Briefs were submitted by both parties and the matter was argued orally to the district court on October 13, 1970. On October 27, 1970, an order was issued by the district court denying the motion of the Belgrade State Bank for dismissal and summary judgment and granting the motion for summary judgment of the 3-D Lumber Company. Judgment was entered November 2, 1970. Belgrade State Bank appeals from that order and judgment.

Plaintiff, 3-D Lumber Company, based this action on an action brought by the defendant, Belgrade State Bank v. Elder, 157 Mont. 1, 482 P.2d 135. That case reveals the following facts:

"Belgrade State Bank * * * loaned money to George Elder. Elder was a logger. Elder signed several promissory notes in 1964 and 1965. The notes were secured by a security agreement entitled 'Security Agreement (Farm Products and Equipment)' covering timber and logs, and listing equipment as a crawler-type tractor, a bulldozer, a truck with a mounted crane and a yarder. In November 1967, the bank took possession of the bulldozer.

"The security agreement was filed of record in Gallatin County; but apparently not in the secretary of state's office.

"Subsequently, Elder traded the crane to defendant Western

Construction Equipment Company for *a heel boom loader*. Also, Elder traded the yarder and the crawler-type tractor to defendant Skagit Equipment Company for a *Skagit yarder*.

"Elder encountered financial difficulties and failed to make payments on the *heel boom loader and the Skagit yarder. They were repossessed and sold to 3-D Lumber Company.*

"In December 1967, Elder filed a petition in bankruptcy. * * * Belgrade State Bank, filed in the bankruptcy matter 'Specification of Objections to Discharge's as follows:

" '1) On or about March 6, 1967, the bankrupt, while engaged in business as a sole proprietor obtained from the Belgrade State Bank an extension of credit on six promissory notes all due on demand except one due on December 21, 1964, and payable to the said Belgrade State Bank by making a materially false statement in writing respecting his financial condition, which said materially false statement was that his total liabilities were $111,466.00, * * * whereas in truth and in fact that same were $248,361.95 * * *.

" '2) On or about March 6, 1967, the bankrupt, while engaged in business as a sole proprietor obtained from the above Belgrade State Bank an extension of credit on six notes all due on demand except one due on December 21, 1964, and payable to the Belgrade State Bank by making a materially false statement in writing respecting his financial condition, which said materially false statement was that his total machinery, equipment and fixtures had a value of $113,300 * * * whereas in truth and in fact, the same were less than $60,000 * * *.

" '3) On or about August 7, 1964, the bankrupt, while engaged in business as a sole proprietor obtained money, in the form of a loan from the Belgrade State Bank on credit by making a materially false statement in writing respecting his financial condition, which said materially false statement was that he had * * * ($7,000) worth of logs cut ready for

hauling, whereas in truth and in fact, he had no such logs cut ready for hauling.

" '4)   Some time after March 7, 1967, and subsequent to the first day of the twelve months immediately preceding the filing of the Petition and bankruptcy herein, the bankrupt transferred certain of his property consisting of a *Little Giant Heel Boom Loader* and a *Skagit Yarder to 3-D Lumber Company* or to other persons with intent to defraud, hinder, or delay his creditors.'

"The referee in bankruptcy held a hearing and made findings as reflected hereinafter:

" 'I.   That on or about March 6, 1967, the bankrupt, at the request of Jack W. Swainson, Executive Vice President of Belgrade State Bank, at Belgrade, Montana, said Swainson then and there acting as agent and for and on behalf of said Belgrade State Bank, answered questions posed him, the said bankrupt, by the said Swainson; Swainson, as the bankrupt answered the questions, placed his answers upon the form entitled "Personal Statement," that all answers given by the bankrupt to the said Swainson were given to the best of the bankrupt's knowledge, and were not materially false in any respect.   That the bankrupt, insofar as he knew, truthfully listed his total liabilities, total assets, and total value of machinery, equipment and fixtures; That at said time, March 6, 1967, the Belgrade State Bank was the holder of six promissory notes executed by the bankrupt, five of these notes being demand, and the sixth having been due on December 21, 1964. That Belgrade State Bank made no binding extension of credit, or any extension of credit, on any representation made by the bankrupt, and bankrupt received nothing of value as a result of any statement, written or oral, made on or about March, 1967, to the said Belgrade State Bank; That as a result of said conversation, bankrupt did assign * * * ($.75) per thousand board feet of all timber cut by him, to

the said Belgrade State Bank, which said moneys so assigned were received by the said Belgrade State Bank.

" 'II. That the bankrupt never made any material false statement, or any false statement, either oral or written, respecting his financial condition to the said Belgrade State Bank, said Belgrade State Bank never made any extensions of credit, nor parted with anything of value, upon any representation, either oral or written, made by the bankrupt, in connection with the said "Personal Statement."

" 'III. That on or about August 7, 1964, the bankrupt, while engaged in business as a sole proprietor, obtained money, in the form of a loan to the Belgrade State Bank on credit by making a statement in writing respecting his financial condition, which said statement was that he had \* \* \* ($7,-000.00) worth of logs cut, and ready for hauling, and that at said time the said bankrupt had in excess of \* \* \* ($10,-000.00) worth of logs cut and ready for hauling, and that the said statement so made was in fact true.

" 'IV. *That the bankrupt,* subsequent to the first day of the twelve months immediately preceding the filing of his Petition in Bankruptcy herein, *made no transfer of property described as a Little Giant Heel Boom Loader and Skagit Yarder. That the bankrupt held said property hereinbefore described under a Lease Option Agreement with 3-D Lumber Company, and never held a legal title thereto, and that said property was repossessed by the 3-D Lumber Company due to the default of the bankrupt in making Lease payments thereon.* That the bankrupt never made any transfer of said property, and particularly, any transfer of said property with any intent to defraud, hinder, or delay his creditors.'

"The bank did not appeal.

"Subsequently the bank filed in Gallatin County the complaint that is the subject of this appeal. *3-D Lumber Company, a defendant, has been dismissed as defendant.* Elder is no

longer in the case. Skagit is still in and has filed motions to dismiss and responded to the merits." (Emphasis added)

As heretofore indicated by the case language, the 3-D Lumber Company was dismissed from the appeal, 157 Mont. 1, 482 P.2d 135, but not on the merits. The parties that remained succeeded in sustaining the district court judgment against the bank as follows:

"The issues raised by the bank in this action as to the discharge of Elder, insofar as Elder's obligation to it based on the notes in question are concerned, have already been decided. The bank having participated in the bankruptcy proceedings is now bound by the decision. See discussion in 1 Collier Bankruptcy Manual, Ch. 23, para. 23.06 [3], pp. 334, 335 on 'Consent by Invoking Bankruptcy Court's Jurisdiction'.

"The bank here argues that since Skagit and the other parties were not parties to the bankruptcy proceedings the findings are not res judicata as to them. This may be, but since Skagit's liability is predicated on Elder's position, the findings as to Elder are res judicata, and the findings are expressly contrary to the exception of the property from discharge.

"The bank goes even further in its argument than indicated above. It argues that pursuant to the *Uniform Commercial Code, section 87 A-9-306(2), R.C.M.1947*, its security interest continued in the collateral as well as any identifiable proceeds because Elder's (the debtor) actions in trading the equipment was unauthorized and because the code does not provide otherwise. We note here that the issue raised concerning the filing of the security agreement with the Gallatin county clerk and recorder, and not with the secretary of state as required by section 87A-9-401, R.C.M.1947, is explained away by the bank by claiming that forestry and logging are agricultural; and thus are farming; and thus the financing statement need only be filed with the county clerk and recorder. *We shall not dwell on this other than to reject such an argu-*

*ment. It does point up, however, that the security agreement was not 'perfected' in any event as to those without notice."* (Emphasis added)

The instant suit was filed by 3-D Lumber Company against the Belgrade State Bank alleging that the bank had brought the above cited cause against 3-D Lumber Company without probable cause and with malice; that the bank was liable to the 3-D Lumber Company for damages incurred by malicious prosecution.

Defendant bank moved the court for summary judgment and dismissal. The 3-D Lumber Company moved for summary judgment.

The court denied the motion of the defendant bank and granted the plaintiff, 3-D Lumber Company, summary judgment as a matter of law as to liability and damages thereunder except as to the question of exemplary damages. The court awarded $3,570.53 for costs and attorney fees in the first action; $500 attorney fees in the present action; and $1.00 as exemplary damages or in lieu thereof the cause be tried on the sole issue of exemplary damages. From that judgment defendant bank appeals.

This Court on two occasions has reviewed the facts and law pertinent to this appeal. Both parties have ably and earnestly pursued their respective positions to a point of disproportionate subjectivity.

An objective review of the record reveals that the suit by the bank against the 3-D Lumber Company and others urged as a principal point that proceeding under Uniform Commercial Code section 87A-9-306(2), R.C.M.1947, permitted the bank to proceed, identify, and recover the noncash proceeds resulting from traded items by Elder which were under a perfected security agreement with the bank against persons or firms not involved in the Elder bankruptcy proceedings. Section 87A-9-306(1) and (2) provides:

"87A-9-306. *'Proceeds'—secured party's rights on disposition of collateral.* (1) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds.' All other proceeds are 'noncash proceeds.'

"(2) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collection received by the debtor."

3-D Lumber Company contends that the bankruptcy order made the entire matter res judicata.

■ The fact that the bankruptcy court ruled Elder did not transfer the Little Giant Heel Boom Loader and the Skagit Yarder within twelve months of filing his petition and that he never held legal title and had possession only on a lease option agreement with 3-D Lumber Company does not adjudicate the contention of the bank that it could identify these items as noncash proceeds in the hands of third parties resulting from the sale or trade of the original secured machines. Further, the issue was not adjudicated by this Court in its opinion reported in 157 Mont. 1, 482 P.2d 135, 28 St.Rep. 229, ot is concerned 3-D Lumber Company or other third parties. As noted hereinbefore, this Court merely found the security interest or agreement relied on by the bank was never properly *"perfected."* This ruling, of course, came after the filing of the bank's complaint in district court.

■ Both parties agree that want of probable cause is an essential element to maintain an action for malicious prosecution. We cannot agree that there was lack of probable cause and malice as a matter of law demonstrated in this record as

it was presented to the district court for its consideration on motion for dismissal and summary judgment.

The judgment of the district court is reversed and the cause dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and CASTLES, concur.