No. 80-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

———————

MICHAEL L. REECE,

Plaintiff and Appellant,

vs.

PIERCE FLOORING,
a Montana Corporation,

Defendant and Respondent.

———————

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Charles E. Snyder, Billings, Montana

For Respondent:

Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
Montana

———————

Submitted on briefs: June 17, 1981

Decided: OCT 13 1981

Filed: OCT 13 1981

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

In an action for malicious prosecution, the District Court of Yellowstone County granted a directed verdict in favor of defendant Pierce Flooring at the conclusion of plaintiff's case-in-chief. Plaintiff Michael Reece appeals.

Reece, a building contractor working under the business name of M & R Enterprises, had been a customer of Pierce Flooring since 1972. On August 16, 1977, Reece owed Pierce Flooring $1,201.20 for carpet installed at 807 Saddle Drive and $1,372.80 for carpeting installed at 134 Lantana Drive. Reece owed Pierce Flooring a total of $2,744.56 on the two accounts, including interest.

Before Reece left for vacation on August 16, 1977, he wrote a check to Pierce Flooring and asked his mother to deliver it for him. Intending to pay only the amount owed on the Saddle Drive account but not recalling that particular amount, he wrote out a blank check to Pierce Flooring, noting as a memo "807 Saddle Drive." He then asked his mother to find out the amount owed on the Saddle Drive account, fill in that amount on the check, and give it to Pierce Flooring.

When Reece's mother went to Pierce Flooring, she talked to an employee at the front desk and asked how much was owed on the Saddle Drive account. According to the testimony of Reece's mother, she was then told that she would have to pay the entire amount for both the Saddle Drive and the Lantana Drive accounts or else Pierce Flooring would place liens on these properties. Concerned about the possible liens, Reece's mother made the check out for $2,744.56, the entire amount owed on both accounts to Pierce Flooring rather than just the amount owed on the Saddle Drive account.

The check was returned for insufficient funds. Reece's mother told her son about the circumstances surrounding her deli-

very of the check when he returned from vacation in early September. He knew that the check had not cleared when he received his bank statement in mid-September. From mid-September to his arrest on November 27, 1977, Reece made no further contact with Pierce Flooring and took no action to pay his account.

On September 12, 1977, Pierce Flooring filed liens on both the Saddle Drive and the Lantana Drive properties. In early October the check was run through a second time and returned again for insufficient funds. Pierce Flooring made several attempts to contact Reece but failed. Reece's business phone was disconnected in mid-October and his home phone was unlisted. Pierce Flooring then mailed to Reece's home address a certified letter notifying Reece that criminal prosecution may be initiated by Pierce Flooring if the check was not made good within five days, as provided in section 45-6-316, MCA. The registered letter was returned to Pierce Flooring marked "refused." Reece testified that he had not received the registered letter since he did not receive his mail at his house address but at his post office box.

On October 25, Ron Pierce, general manager of Pierce Flooring, signed an "Investigative Form for Bad Checks and Forgeries" which was the standard form used by the Yellowstone County attorney's office to decide whether or not to prosecute a bad check charge. One question asked whether the check was given in payment for an existing debt, to which Pierce Flooring replied "yes." The deputy county attorney who subsequently decided to prosecute the case, testified at the trial that he would have rejected and probably did reject the case at that time because of the affirmative answer to the existing debt question.

Nevertheless, on November 1, a complaint was filed in the Justice Court of Yellowstone County on the charge of issuing a bad check (felony) in that Michael Reece "with the purpose to secure property, to wit: lien waivers on real estate and

fixtures" issued the check. The record is unclear as to how the deputy county attorney came to the belief that lien waivers had been given in exchange for full payment. The deputy county attorney testified that such information could have come from either law enforcement personnel or from an employee of Pierce Flooring, but he could not remember why he thought lien waivers had been given to Reece.

On Sunday, November 27, 1977, Reece was arrested in his home. He was booked and kept in the Yellowstone County jail until he arranged bail of $2,800. On December 1, 1977, the complaint was dismissed by the deputy county attorney on the grounds that new evidence indicated that it was not in the interest of justice to prosecute.

Thereafter Reece filed a civil action for malicious prosecution against Pierce Flooring. It came on for trial on October 6, 1980. At the conclusion of plaintiff's case-in-chief the District Court granted Pierce Flooring's motion for a directed verdict as follows:

> "THE COURT: All right. Well, gentlemen, on the authority that's been cited to me, that the question of lack of probable cause is a question of law to be determined by the Court—and that specifically is Wendel vs. Metropolitan Life Insurance Company, 83 Montana 252—I think the Court is compelled to grant the motion and dismiss the complaint in this cause, and it is so ordered."

Plaintiff Reece appeals presenting essentially two issues for review:

(1) Is probable cause a question of law to be determined by the Court?

(2) If not, is the evidence sufficient to create a jury issue on probable cause?

In a civil action for malicious prosecution, the plaintiff must allege and prove (1) that a judicial proceeding was commenced and prosecuted against him, (2) that the defendant was responsible for instigating, prosecuting or continuing such

- 4 -

proceeding, (3) that there was lack of probable cause for defendant's acts, (4) that defendant was actuated by malice, (5) that the judicial proceeding terminated favorably for plaintiff, and (6) that plaintiff suffered damage and the amount thereof. McGuire v. Armitage (1979), ___Mont.___, 603 P.2d 253, 36 St.Rep. 2142; Stephens v. Conley (1914), 48 Mont. 352, 138 P. 189. The issues in this appeal concern the third element listed above.

In this case the District Court ruled that lack of probable cause was a question of law to be determined by the court on the basis of our 1928 opinion in Wendel v. Metropolitan Life Insurance Co., 83 Mont. 252, 272 P. 245. This was error.

We acknowledge the existence of an isolated general statement in Wendel to that effect:

> "Therefore, in actions for malicious
> prosecutions, the real controversy is,
> generally, upon the question of malice and want
> of probable cause. The burden of proving these
> essential elements rests upon the plaintiff, and
> whether there was a want of probable cause is
> purely a question of law."

Wendel involved a malicious prosecution action by a discharged employee against his former employer following dismissal of a larceny prosecution instigated by his former employer. A jury verdict in favor of the discharged employee was reversed on appeal on the ground that the uncontroverted facts established probable cause as a matter of law. In that context where the facts of the larceny were undisputed and the criminal charge was dismissed for failure of the state to diligently prosecute the same, the question of probable cause became a question of law for the court. We expressly disapprove the application of this rule generally to actions for malicious prosecution holding the rule properly applicable only where there is no conflict in the evidence on the issue of probable cause and such uncontroverted evidence admits of only one conclusion on that issue.

The cases of Orser v. State of Montana (1978), 178 Mont.

- 5 -

126, 582 P.2d 1227, and 3-D Lumber Co. v. Belgrade State Bank (1971), 157 Mont. 481, 487 P.2d 1136, are similar to Wendel. In both cases the evidence relating to the presence or absence of probable cause was undisputed and admitted of only one conclusion. Under such circumstances the issue of probable cause became a question of law for the court. Any application of that principle to cases involving conflicting evidence on the issue of probable cause is expressly disapproved.

Puutio v. Roman (1926), 76 Mont. 105, 245 P. 523 expresses the correct rule in malicious prosecution cases. There this Court reversed a directed verdict for the defendant setting forth the applicable law in this language:

> "It is settled in this jurisdiction, and elsewhere generally, that a cause should never be withdrawn from the jury, unless the conclusion necessarily follows, as a matter of law, that a recovery cannot be had upon any view which can reasonably be taken of the facts which the evidence tends to establish. A motion for a directed verdict in favor of the defendant is in effect a demurrer to the plaintiff's evidence; it admits as true all material facts in evidence which tend to establish plaintiff's cause of action, whether such facts be produced by the plaintiff or the defendant. Such facts, with every legitimate inference that may be drawn from them, are to be considered in the light most favorable to the plaintiff. The fact that the testimony in behalf of the defense pleaded is uncontradicted will not justify a directed verdict in favor of the defendant, if the inferences to be drawn from it are open to different conclusions by reasonable men."
> (Citations omitted.)

The distinction between the judge and jury function was recently succinctly expressed by the Georgia Court of Appeals in this manner:

> "Want of probable cause is an essential element of a malicious prosecution cause of action. Ordinarily, the existence of probable cause is a question of fact for jury determination. Only where the material facts are not in dispute, or when only reasonable inference can be drawn from the evidence, does the existence of probable cause become an issue of law for the court to resolve." Kviten v. Nash (1979), 150 Ga.App. 589, 258 S.E.2d 271.

We hold, therefore, that a directed verdict in a malicious

prosecution action is error where the evidence, including reasonable inferences, is susceptible to different conclusions by reasonable men when viewed in the light most favorable to the party opposing the directed verdict. We further hold that under such circumstances the issue of probable cause must be submitted to the jury for determination and not be decided by the court as a matter of law.

We now examine the evidence in the light most favorable to the plaintiff to determine if the evidence is sufficient to establish a jury issue on probable cause. Probable cause means "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense with which he is charged." Cornner v. Hamilton (1922), 62 Mont. 239, 204 P. 489, quoted with approval in Orser v. State of Montana, supra. Moreover, since an action for malicious prosecution runs counter to important legal and social policies, such as encouraging criminal proceedings against those who appear guilty of a crime, it is not favored by the law and the burden on the plaintiff is heavy. Wendel, supra; Orser, supra.

The undisputed evidence indicates that plaintiff Reece was charged on the basis of a report signed by Pierce who instigated the criminal proceeding. There was no full disclosure of the facts surrounding the check to the prosecutor then or thereafter. Pierce did not disclose the following facts: (1) that Reese's mother passed the check to Pierce Flooring in the increased amount after being advised that liens would be filed against both properties if the check were not made out for the full amount, (2) that liens had been filed against both properties, (3) that the report was turned over to the police department after Pierce determined that Reece was not going to come in and work out something on the check.

Additionally an employee of Pierce Flooring testified by

deposition that she kept Pierce informed of anything on the case that came to her attention and disputed many of Pierce's statements indicating his lack of knowledge on developments concerning the progress of prosecution in the case. The basis of the criminal charges against Reece was that the check was given to secure lien waivers from Pierce on the two properties. When the prosecutor contacted Pierce Flooring for copies of the lien waivers, this employee did not tell him there were no lien waivers but instead wrote him a memo stating:

> "I can't find a copy of the lien waiver. The
> girl that was here before me would not always
> take copies of the lien waivers."

This memorandum was dated November 4, 1977, almost two months after liens had been filed by Pierce Flooring against both properties.

We hold that the foregoing evidence is sufficient to present a jury issue on the presence or absence of probable cause for the prosecution against plaintiff Reece. The total evidence presents a basis for differing conclusions concerning whether Pierce Flooring's actions were those that would warrant a reasonably cautious and prudent man to believe that Reece was guilty of the offense of which he was charged; whether the facts surrounding the issuance and delivery of the check were fairly presented to law enforcement officers; whether the charge was filed to collect a preexisting debt with nothing of value given to Reece; and whether Pierce Flooring fabricated facts to motivate criminal proceedings against Reece. These are issues for determination by a jury, not questions of law to be decided by the Court. We express no opinion concerning the ultimate determination of these issues, only that they are properly to be resolved by a jury.

The directed verdict and judgment are vacated. This cause is remanded to the District Court for a new trial.

_____Frank I. Haswell_____
Chief Justice

We concur:

_____Daniel J. Shea_____
_____Frank B. Morrison_____
_____John C. Sheehy_____
Justices

- 9 -

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent.

The majority here has allowed themselves the luxury of becoming involved in a morass of Red Herrings about lien waivers, etc., and uncontroverted evidence, and has totally disregarded the authority that pertains when a citizen proceeds through the county attorney rather than directly, i.e., a justice court complaint.

On October 25, 1977, Ron Pierce, general manager of Pierce Flooring, signed an "Investigative Form for Bad Checks and Forgeries," the standard form used by the Yellowstone County Attorney's office to decide whether to prosecute a bad check charge. The form was filled out properly, including one question which asked whether the check was given in payment for an existing debt, to which Pierce Flooring replied "yes." The deputy county attorney who subsequently decided to prosecute the case testified at the trial that he would have rejected, and probably did reject the case, at that time because of the affirmative answer to the existing debt question.

Nevertheless, on November 1, a complaint was filed in the Justice Court of Yellowstone County on the charge of issuing a bad check (felony) in that Michael Reece "with the purpose to secure property, to wit: lien waivers on real estate and fixtures" issued the check. The record is unclear as to how the deputy county attorney came to the belief that lien waivers had been given in exchange for full payment. The deputy county attorney testified that such information could have come from either law enforcement personnel or from an employee of Pierce Flooring, but he could not

-10-

remember why he thought lien waivers had been given to Reece.

The county attorney's office received a note from Pierce Flooring on November 8, 1977, stating that copies of a lien waiver could not be found. The deputy county attorney who swore out the affidavit in support of the complaint against Reece testified that had he not been so busy, he would have dismissed the case at that time or would have confirmed that lien waivers could not be found and then would have dismissed the case.

On Sunday, November 27, 1977, Reece was arrested in his home. He was booked and kept in the Yellowstone County jail until he arranged bail of $2,800. On December 1, 1977, the complaint was dismissed by the deputy county attorney on the grounds that new evidence indicated that it was not in the interest of justice to prosecute.

Reece presents essentially one issue for review: Whether the District Court erred by granting Pierce Flooring's motion for directed verdict on the grounds that Reece failed to show want of probable cause on the part of Pierce Flooring.

Reece argues that the question of want of probable cause should not have been decided by the District Court as a matter of law because the record contains sufficient proof of probable cause to submit this issue to the jury. He argues specifically that when the evidence he presented is viewed in its most favorable light it shows:

1. Pierce Flooring's actions were not those of a prudent, cautious and reasonable man;

2. All facts surrounding the check were not fairly

-11-

and fully represented to the law enforcement officers;

3. The charge was filed to collect a preexisting debt and nothing of value was given to Reece;

4. Pierce Flooring failed to make sufficient inquiry into the circumstances under which the check was issued; and

5. Pierce Flooring intentionally misled the law enforcement officer and fabricated facts to motivate criminal proceedings against Reece.

It is true that upon a motion for a directed verdict by a party, the evidence introduced by the opposing party must be viewed in its most favorable light. See Sistock v. Northwestern Telephone Systems, Inc. (1980), ____ Mont. ____, 615 P.2d 176, 178, 37 St.Rep. 1247, 1249, and cases cited therein. Nevertheless, such a rule does not mean that this Court can make numerous factual inferences which are not supported by the record. Considering the evidence in the light most favorable to Reece, I cannot say that the District Court erred in its verdict.

Further, it is a well-settled rule in this state that it is the function of the court to determine whether probable cause exists in a malicious prosecution case; it is a question of law to be determined by the court. Orser v. State (1978), 178 Mont. 126, 582 P.2d 1227; 3-D Lumber Co. v. Belgrade State Bank (1971), 157 Mont. 481, 488-489, 487 P.2d 1136, 1140; Wendel v. Metropolitan Life Ins. Co. (1928), 83 Mont. 252, 263, 272 P. 245, 249. The District Court was therefore acting within its prerogative to decide this case on a directed verdict, as a matter of law, if the record supports its conclusion that Reece failed to present his _prima facie_ case of malicious prosecution and, in

particular, that Reece failed to show that Pierce Flooring acted without probable cause by going to the Yellowstone County Attorney and filling out an information sheet on bad checks.

There is no question that want of probable cause is the gist of an action for malicious prosecution. McGuire v. Armitage (1979), ____ Mont. ____, 603 P.2d 253, 36 St.Rep. 2142; Wilson v. Gehring (1968), 152 Mont. 221, 448 P.2d 678; Fauver v. Wilkoske (1949), 123 Mont. 228, 211 P.2d 420; Cornner v. Hamilton (1922), 62 Mont. 239, 204 P. 489. Probable cause means "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense with which he is charged." Cornner, 62 Mont. at 243, 204 P. at 491, as quoted in Orser, 178 Mont. at 137, 582 P.2d at 1233. Moreover, since an action for malicious prosecution runs counter to important legal and social policies, such as encouraging criminal proceedings against those who appear guilty of a crime, it is not favored by the law and the burden on the plaintiff is heavy. See Wendel, 83 Mont. at 262-263, 272 P. at 248; accord, Orser, 178 Mont. at 135, 582 P.2d at 1232.

Reece, therefore, had a heavy burden to show that Pierce Flooring acted without probable cause, and clearly he cannot meet that heavy burden by arguing only tenuous inferences.

Although there may be some question as to a full disclosure of all of the facts surrounding the issuance of the check, it is clear from the record that Pierce Flooring was relying upon the decisions made at the county attorney's

-13-

office concerning what information was important and what information was not important. Pierce Flooring truthfully and accurately filled out the county attorney's information sheet on which the decision to prosecute was based.

Any confusion over the existence of lien waivers was eradicated on November 8, when the county attorney's office received the note from Pierce Flooring that there was no record of any lien waivers. From November 8, 1977 to November 27, when Reece was arrested, according to the testimony of the deputy county attorney in charge of the case, there was sufficient disclosure of information by Pierce Flooring to warrant dismissal of the case.

As this Court noted in Halladay v. State Bank of Fairfield et al. (1923), 66 Mont. 111, 117-118, 212 P. 861, 863-864:

". . .The rule is that, where the prosecuting officer starts a criminal proceeding upon a full and fair statement of the facts from the accuser, he acts for the state; and so he does when he proceeds upon his own personal knowledge . . .

". . .

"Generally, it may be said that a prosecuting officer is charged with the duty of determining when to commence a particular prosecution, and when to discontinue it. He stands upon a different footing from a defendant, who goes to a justice of the peace, swears out a warrant, and directs the prosecuting officer to see to its execution. The county attorney in this state, not only directs under what conditions a criminal action shall be commenced, but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes. . .

". . .

". . . If, therefore, a prosecuting officer incorrectly determines that certain facts given to him constitute a crime and proceeds to set on foot necessary action, the

-14-

informant is not liable, because the fault is not his, but that of the officer. . ." B (Emphasis supplied.)

In light of Pierce Flooring's reliance on the expertise of the county attorney's office in terms of what information was important and what was not, it cannot be said that Pierce Flooring was not acting prudently and cautiously and without probable cause. I would affirm the District Court's directed verdict for Pierce Flooring.

_____
Justice

-15-