In re Roosevelt **CREEL** and Nancy Creel, Debtors.

Robert F. **ANDERSON,** Trustee, Plaintiff,

v.

**HERCULES, INC., Defendant.**

Bankruptcy No. 87–00225. Adv. No. 87–0069.

United States Bankruptcy Court, D. South Carolina.

Aug. 26, 1988.

Flynn Griffin, Columbia, S.C., for plaintiff.

Robert P. Wood, Columbia, S.C., for defendant.

## ORDER

WILLIAM THURMOND BISHOP,
Bankruptcy Judge.

This matter comes before the court on the complaint of the Trustee to avoid an alleged preferential transfer of two Caterpillar D-5 Combo tractors, a Hyster trailer, and two pallets (collectively "the collateral"), pursuant to 11 U.S.C. § 547(b).[1] The Trustee seeks the turnover of the collateral, or, in the alternative, judgment in the amount of $75,448.04.

## FINDINGS OF FACT

The debtor, Roosevelt Creel, worked for the defendant, Hercules Inc., from 1971 until 1985 in various capacities, including that of foreman of one or more stump harvesting crews. The practice of stump harvesting involves the collection of dead tree stumps to be sent by railroad to the Hercules processing plant in Brunswick, Georgia, where resin is extracted from the stumps. The resin removed from the stumps is used in a variety of products, including chewing gum, cake batter, food coloring, toothpaste, and cleaning products.

In 1985 Hercules reduced its stump harvesting operations and Mr. Creel was dismissed. At that time, Mr. Creel went into the stump harvesting business as a private contractor for Hercules. Hercules sold Mr. Creel the equipment for his stump removal operation, including the two Caterpillar D-5 tractors, the Hyster trailer, and the two pallets. On August 29, 1985, Mr. Creel executed a promissory note for the collateral, a security agreement, and a financing statement for the two Caterpillar D-5 trac-

---

1. 11 U.S.C. § 547(b) states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before the transfer was made;
(3) made while the debtor was insolvent;
(4) made-
(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; *and*
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

tors and the pallets. Security in the Hyster trailer is covered by a Certificate of Title. The parties stipulated that Hercules did not have a perfected security interest in the Hyster trailer due to failure to comply with the Certificate of Title recording requirements of S.C.Code § 56–19–620 (1976).

The financing statement was recorded with the Florence County Clerk of Court, the county of Mr. Creel's residence, on September 11, 1985. No financing statement was filed in any other county or with the South Carolina Secretary of State.

As a result of the need for extensive repairs to the tractors, Mr. Creel decided to cease his stump harvesting operations. On October 15 or 16, 1986, Mr. Creel notified Hercules that he was quitting as a contractor. At that time, the collateral was located in a heavily wooded area in Clarendon County, South Carolina. On October 20, 1986, agents from Hercules visited the site to inspect and photograph the collateral. On October 28, 1986, the tractors were repaired by mechanics from Hercules, and on October 29, 1988, the tractors were driven onto trailers and hauled to separate Hercules facilities in Georgia.

The parties have stipulated the following facts:

October 24, 1986 was the ninetieth day before the petition was filed; Hercules will recieve more on its claim if it is allowed as a secured rather than unsecured claim; Roosevelt Creel was insolvent for the 90 days immediately preceding the filing of the petition for relief.

At the hearing held July 21, 1988, the court ruled that Hercules did not have a perfected security interest in the collateral by virtue of possession (one of the methods utilized to perfect a lien). Furthermore, the court ruled that as a matter of law Hercules did not have a perfected security interest in the title to the Hyster trailer.

## ISSUES

1. Is the collateral "equipment used in farming operations" pursuant to South Carolina Code § 36–9–401(1)(a)?

2. What is the value of the collateral?

## CONCLUSION

◼ If the collateral is "equipment used in farming operations", then Hercules had a perfected security interest more than 90 days before the petition for relief was filed and Hercules may keep the tractors and pallets. If it is not equipment used in farming operations, then Hercules has an unperfected security interest, and the Trustee may avoid such an interest pursuant to 11 U.S.C. § 544(a).

South Carolina Code § 36–9–401 (1976) states:

(1) the proper place to file in order to perfect a security interest is as follows:

(a) when the collateral is equipment used in farming operations, . . . then in the office of the Register of Mesne Conveyances of the Clerk of Court in the county of the debtor's residence . . .

(b) . . .

(c) in all other cases, in the office of the Secretary of State.

Therefore, a security interest in equipment used in a farm operation is perfected by filing with the clerk of court. When the equipment is not used in a farming operation, the financing statement must be filed with the Secretary of State. Since Hercules only filed a financing statement with the Florence County Clerk of Court, if stump harvesting is deemed not to be a farming operation, then Hercules is left with an unperfected security interest in the collateral and must return it to the Trustee or the trustee have judgment for its value. Consequently, this Court must determine if stump harvesting is a farming operation *vel non.*

The Uniform Commercial Code does not define "equipment used in farming operations," nor does it define "farm" or "farming operations". However, it does define "farm products". Uniform Commercial Code § 9–109, as embodied in South Carolina Code § 36–9–109 (1976), states:

Goods are . . .

(3) "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are

products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing, or other farming operations. If goods are farm products, they are neither equipment nor inventory.

Comment 4 to § 36–9–109 suggests that the phrase "farming operations" should be narrowly construed. *In re Collins*, 3 B.R. 144, 28 U.C.C. Rep. 1520 (Bankr.D.S.C. 1980), *In re Blease*, 24 U.C.C. Rep. 450 (Bankr.D.N.J.1978), *In re Butcher*, 43 B.R. 513, 39 U.C.C. Rep. 345 (Bankr.E.D.Tenn. 1984).

> Although the decisions construing §§ 9–109 and 9–104 are not inconsistent there is no common thread of reasoning that sets out an acceptable strategy for determining when equipment is used in farming operations. The closest generalization that can be made is that the equipment must be used directly to perform tasks customarily done on farms.

*In re Blease, supra* at 454.

Stump harvesting is not a task customarily done on a farm. It is performed on large tracts of heavily-forested land.

> The concept of "farming" and "farming operations" clearly contemplates involvement in the wide range of activities associated with the raising of crops or livestock and not merely the rendition of a service related to such crop or livestock production. More simply, the definitions and the commentary cited above stress the notion of raising crops or livestock as the essence of farming. It is this involvement in process of growing or developing crops and livestock that defines farming. In the case of crops, farming contemplates the cultivation, caring for and harvesting of the crops. In the case of livestock, farming similarly contemplates the breeding, maintaining, and bringing to maturity of the animals and the subsequent marketing of the animals or their raw products.
> Merely undertaking an activity ancillary to this process does not alone constitute a farming operation. "To be [engaged in] farming operations the debtor must actually be engaged in farming, not farm related or farm support or farm like activities." *John M. Saums, Inc v. Blease*, 24 UCC Rep 450, 453 (D NJ 1978) ...
> Thus, the mere fact that equipment is if a type useable on a farm, or in fact is actually physically employed on a farm, is not determinative.

*In re Butcher, supra* at 351, 352, 43 B.R. 513.

Caterpillar D–5 Combos are not designed for use on a farm. They run on tracks, and the implements that are attached are limited in their use solely to stump harvesting. There is no caring or cultivation involved in stump harvesting. There are no daily activities required. On the contrary, the stumps that are harvested are best if they have been dead for more than fifty years.

Machinery and equipment used in commercial logging operations have been held not to be "equipment used in farming operations" for the purposes of Article Nine of the Uniform Commercial Code. *Mountain Credit v. Michiana Lumber and Supply, Inc.*, 31 Colo.App. 112, 498 P.2d 967, 10 U.C.C. Rep. 1347 (1972); *Belgrade State Bank v. Elder*, 157 Mont. 1, 482 P.2d 135, 8 U.C.C. Rep. 1359 (1971); *In re Merrill*, 29 B.R. 531 (Bankr.D.Maine 1983).

■ As a narrow interpretation is to be given to the phrase "farming operations", and stump harvesting does not require care and cultivation of crops, and commercial logging is not considered to be a "farming operation", this court finds that stump harvesting is not a "farming operation". Therefore Hercules should have filed the financing statement with the South Carolina Secretary of State. Hercules, by taking possession of its collateral within ninety days prior to the filing of the bankruptcy petition, improved its position from that of an unsecured creditor to a secured creditor by virtue of possession. This transfer is voidable pursuant to 11 U.S.C. § 547(b).

■ The Trustee's remedy is controlled by 11 U.S.C. § 550(a), which provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under Section 544, 545, 547, 548, 549, or 724(a) ... the Trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property ...

After a review of the record, evidence, and testimony presented at the July 21, 1988 hearing, the court has established the value of the collateral.

At the hearing, the court placed a value of $1,500.00 on the Hyster trailer, and ruled that the Trustee may elect possession of the Hyster trailer or judgment against Hercules in the amount of $1,500.00. In any event Hercules shall hold the Trustee and the bankruptcy estate harmless for any rent claims for the storage of the Hyster trailer.

The value of the pallets shall be set at $350.00 each, for a total of $700.00. The Trustee may elect possession of two pallets identical to those used by the debtor or judgment against Hercules in the amount of $700.00.

The Trustee seeks to place a value of $52,000.00 on the two Caterpillar D–5 tractors. However, testimony from the hearing indicates that the debtor paid too much initially to purchase the tractors, that the nature of stump-harvesting results in increased depreciation of the equipment, and that the tractors were poorly maintained. As a result, one of the tractors is worth no more than salvage value, or $5,000.00, while the second tractor has a value of $12,000.00. The Trustee may elect possession of the two Caterpillar D–5 tractors or judgment against Hercules in the amount of $17,000.00.

Should the Trustee request possession of any or all of the collateral, then Hercules shall bear the cost and responsibility of moving the collateral pursuant to their claim that ...

"... Hercules stands ready ... to haul the equipment to the place of the Trustee's choice in South Carolina. Hercules has both the manpower and the equipment to do this."

Therefore, this court finds that the collateral used by the debtor for stump harvesting operations is not equipment used in a "farming operation". Since Hercules, Inc. incorrectly filed its financing statement with the Florence County Clerk of Court instead of the South Carolina Secretary of State, Hercules, Inc. has an unperfected security interest that is voidable by the Trustee, pursuant to 11 U.S.C. § 547(b). If the Trustee so requests, Hercules, Inc. shall return the two Caterpillar D–5 Combos, the Hyster Trailer, and two pallets identical to those used by the debtor to the place of the Trustee's choice in South Carolina within 30 days after receiving a written request from the Trustee to do so. If the Trustee does not choose possession, then judgment shall be entered for the value of the respective collateral.

AND IT IS SO ORDERED.