JUSTICE COTTER
concurs and dissents.
¶62 I join in the Court’s disposition of Issue Four. I dissent from the Court’s Opinion on the remainder of the issues.
¶63 The Court’s recitation of facts, while correct as far as it goes, is far too cursory. In fact, the Court sets out basically those facts which support its decision. For the most part, it ignores many allegations made by the Plaintiffs-most of which are not in dispute-which raise genuine issues of material fact regarding the motivations of the Defendants in referring Sherner for fraud investigation, and which are deserving of resolution through trial. Among them are the fact that NATLSCO began conducting intermittent surveillance of Sherner as early as October 1996, in order to monitor Sherner’s physical activities, on the belief that he was engaging in activities inconsistent with his claimed disabilities. While the Court correctly notes that NATLSCO referred Bernice to the State Auditor (¶ 17), it neglects to mention that it referred Sherner as well. Subsequently, Andersen made the decision to send the surveillance reports to the fraud unit, which came to the conclusion that Sherner was engaging in activities beyond his stated abilities, and that investigation by the Department of Insurance was warranted. In fact, Andersen recommended that Sherner’s domiciliary care be terminated for Sherner’s performance of activities beyond what a person in his stated condition should be able to perform. Ultimately, when the referral was made to the Auditor’s Office for the fifing of criminal charges, the Department of Insurance investigator concluded that Sherner was making false or misleading statements about his physical condition, in addition to concluding that he was verifying Bernice’s bills for services not provided. Notably, though, in referring Sherner for fraud investigation, neither NATLSCO or Andersen informed the fraud unit that Sherner was undertaking increasingly challenging activities based upon his treating physicians’ recommendations and concurrence, an omission that the attorney from the Auditor’s office, upon learning of it, found quite disturbing. Thus, there was a wholly separate component to the fraud investigation, involving the aggressive referral of Sherner by National and Andersen for fraud in accepting domiciliary care, that the Court largely ignores *263 in its recitation of facts.
¶64 While it is true that the actual complaint filed by the Auditor addressed only the alleged billing fraud, the fact remains that the initial referral and investigation did not start that way. It is that referral, based upon a knowingly misleading set of facts, which is the subject of Sherner’s allegations. It is against this full backdrop that the Plaintiffs’ claims of tortious misconduct and malicious prosecution should have been-but were not-analyzed by the Court.
¶65 Turning to the Court’s legal conclusions, I find error there as well, for two reasons. First, the legal conclusions are reached on the basis of an abbreviated and incomplete statement of facts, as noted above. Second, the Court in my judgment failed to apply the correct statutory analysis to the facts before it.
¶66 In resolving Issue One with respect to the entry of summary judgment in favor of Andersen, the Court declined to consider the provisions of § 28-10-702(3), MCA, under which an agent may be held responsible to third persons as a principal when her acts in the course of her agency are wrongful in their nature. We have said that an agent of a corporation may be held personally liable where that agent commits a tort. Little v. Grizzly Manufacturing (1981), 195 Mont. 419, 424, 636 P.2d 839, 842. Construing the facts most favorably to Sherner, as we are obligated to do on review of summary judgment, I submit there was a question of fact as to whether Andersen’s referral of Sherner for criminal investigation, and her omission of the pertinent medical facts when making that referral, amounted to a tort.
¶67 Turning to Issue Two, under which the Court granted summary judgment to the remaining Defendants based upon immunity under § 33-1-1210, MCA, and Issue Three, under which the Court affirmed the entry of summary judgment to all Defendants on Shemer’s malicious prosecution claim, I submit the Court erred here as well. While it is true that these Defendants did not formally commence criminal proceedings against Sherner, they were without question the ones who instigated the investigation. The Court’s conclusion to the contrary, see ¶ 45, is simply not supported by the evidence. Instigation is sufficient to satisfy an element of malicious prosecution. Opinion, ¶ 41, and Plouffe, ¶ 16. I submit that, at a minimum, the Plaintiffs presented sufficient evidence to suggest that the referral of Sherner (as opposed to Bernice) for prosecution was not supported by probable cause, and was in fact actuated by malice-by a wish to annoy or injure Shemer-and with the intent to both harm Sherner by terminating his domiciliary care, and to benefit the Defendants by terminating their *264 financial responsibility for that care. As we said in Reece v. Pierce Flooring (1981), 194 Mont. 91, 96, 634 P.2d 640, 643, if the evidence in a malicious prosecution case, including the reasonable inferences to be drawn therefrom, is susceptible to different conclusions by reasonable men, then the issue of probable cause to support the underlying action should be submitted to a jury. By affirming the entry of summary judgment, we have ignored this rule.
¶68 For the foregoing reasons, I would reverse the entry of summary judgment on Issues One through Three, and remand for trial on the merits. I dissent from our refusal to do so.
JUSTICE NELSON joins in the concurrence and dissent of JUSTICE COTTER.